JOURNAL ENTRY and OPINION
Defendant-appellant, Michael Anderson, appeals from his conviction in the Cuyahoga County Court of Common Pleas on one count of felonious assault in violation of R.C. 2903.11.
The incident in question occurred on November 23, 1999. The appellant was indicted on two counts of felonious assault and one count of possession of criminal tools on January 25, 2000.[1] The appellant chose to waive his right to a jury trial. A bench trial commenced on May 30, 2000. The appellant was found guilty on one of the two felonious assault counts in the indictment and was sentenced to two years imprisonment. On September 27, 2000, the appellant was granted leave to file a delayed appeal.
The appellant argues that the evidence adduced at trial was more consistent with a conviction for aggravated assault, R.C. 2903.12, than for felonious assault, as his actions were purportedly brought on by serious provocation occasioned by the victim. Because we find that the appellant's felonious assault conviction is supported by the weight of the credible evidence in the record, we affirm the judgment of conviction entered by the trial court.
The appellant's singular assignment of error states:
 I. THE DECISION OF THE TRIAL COURT FINDING DEFENDANT GUILTY OF FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of *** the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, 345.
The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982),457 U.S. 31, where the Court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence.
 Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
The underlying incident in this case arose out of a transaction wherein the victim, Jabar Durden, borrowed an automobile from one Athena Williams[2] and in return provided the use of his Sega Dreamcast video console to Williams. The automobile in question belonged to Richard Racz, the then boyfriend of Williams. When Durden attempted to return the automobile to Williams, she claimed that it had been damaged and she refused to return the video console. Shortly thereafter, Williams sold the video console to a pawn broker for $150. Despite repeated requests for the money and visits to Williams' apartment by Durden, she refused to turn over the proceeds from the sale of the video console.
On June 23, 1999, Durden returned to Williams' to attempt to recover the money that he felt was owed to him. Durden was accompanied on this visit by his girlfriend, Khalia Johnson. Apparently, Durden had been at the apartment earlier in the day and had been told that he would get his money if he returned in the evening.
Upon arriving at the apartment, Durden and Johnson were met by Williams and the appellant. The appellant and Williams told Durden and Johnson to accompany them in Williams' car to a home in East Cleveland where the money was allegedly waiting. During this ride, Williams' car was being driven by Durden. After getting lost, Durden was directed to a home on Brinkmore Avenue in Cleveland Heights. The appellant and Williams exited the car, went into the house under the auspices of retrieving the money owed Durden and then returned to the car, which was still parked in the driveway. At this juncture, rather than giving Durden his money, the appellant and Williams initiated a joint attack on Durden and Johnson, who were still seated in the car. The appellant repeatedly stabbed Durden while Williams assaulted and stabbed Johnson. At some point during this episode, Johnson managed to wrestle the knife away from Williams, but not before sustaining several stab wounds. Durden also sustained multiple stab wounds to his head, arms, hands and torso as a result of the sortie.
R.C. 2903.11 defines the offense of felonious assault as follows. "No person shall knowingly cause serious physical harm to another ***."
R.C. 2903.12 defines the offense of aggravated assault:
 (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
(1) Cause serious physical harm to another * * *.
Aggravated assault is not a lesser included offense of felonious assault, but is an inferior degree of felonious assault with a reduction in penalty upon the determination by the trier of fact of the existence of the mitigating circumstance of serious provocation. State v. Carter (1985), 23 Ohio App.3d 27, 32, 491 N.E.2d 709; State v. Wilson (Sept. 21, 2000), Cuyahoga App. No. 77115, unreported. Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. State v. Deem (1988), 40 Ohio St.3d 205,533 N.E.2d 294; State v. Wilson, supra.
Both Durden and Johnson testified that they were essentially lured into a vehicle by Williams and the appellant under the false pretenses of retrieving the money owed by Williams to Durden, and that the appellant attacked Durden without warning and without provocation by repeatedly stabbing Durden in the neck as he sat in the driver's seat in the automobile. This testimony, if believed by the trier of fact, plainly demonstrated that the appellant was not provoked by Durden and that the appellant was properly convicted of felonious assault rather than aggravated assault. Johnson's testimony on this issue was as follows:
 A: Anderson came back and said his cousin was on his way out to bring the money and he wanted a ride back to Athena (sic) house. Then he was sitting in the car quietly and he started stabbing Jabar, Anderson started stabbing Jabar.
Q: Did you see him stab Jabar?
A: Yes.
Q: Why did he stab Jabar?
A: I don't really know. He just started stabbing him.
Q: Did Jabar have a knife or a gun or anything?
A: No.
Q: Did he say anything to provoke this?
 A: No, everybody was just sitting in the car quietly and then Anderson started stabbing him.
The appellant's argument in the within appeal is centered on the alleged lack of credible testimony to rebut the Defendant's assertion that he was under the influence of a sudden fit of rage provoked by the victim, which provocation was reasonably sufficient to incite him to use deadly force. Even if we accept the appellant's contention that the testimony of Durden was utterly unbelievable in all relevant aspects, we are still left with the testimony of Johnson as excerpted above which clearly does constitute credible testimony to rebut the appellant's assertion that he was provoked by Durden. We further note that Durden was subject to cross-examination by appellant's trial counsel, who did in fact conduct a rigorous cross-examination, and that the trial court was free to believe all, some or none of Durden's testimony. The trial court apparently found the testimony of Durden to be more credible than that of appellant. This was a rational judgment by the trier of fact given that the appellant's testimony was totally inconsistent with the physical evidence as well as with the testimony of the investigating detective and the other witnesses at trial.[3]
Here, the appellant did not present sufficient evidence of serious provocation to allow the trier of fact to find him guilty of aggravated assault. Accordingly, this court cannot conclude the trial court's verdict was against the manifest weight of the evidence.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________ MICHAEL J. CORRIGAN, JUDGE:
TIMOTHY E. McMONAGLE, P.J., and JAMES J. SWEENEY, J., CONCUR.
[1] The possession of criminal tools count was dismissed by the State immediately prior to trial.
[2] Williams was a co-defendant and was tried separately for her role in the assault upon Durden and his girlfriend, Khalia Johnson.
[3] For example, the appellant testified that Durden, while high on crack cocaine, forced he and Williams into the car at gun point, but fails to explain why he returned to the car after getting out of the car and entering the Brinkmore Avenue home. Rather than report the incident to police, the appellant waited to give his version of events until he was questioned by the police, approximately three weeks after the incident. At the time that he was questioned, the appellant claimed that he had taken a gun from Durden during the struggle. When asked as to the whereabouts of this gun, the appellant claimed that he threw it out the window of Williams' car after leaving the scene. The appellant also gave the police a fake name, but then gave himself away when he was unable to spell his own alias.